**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

In re:

Case No.  HG 05-02298

ERIC G. WEEKS and
DEBORAH L. WEEKS,

     Debtors.

_____/

ERIC WEEKS,

     Plaintiff,

vs.                                                               Adv. Pro. No.  08-80324

ISABELLA BANK CORPORATION,
WARDROP & WARDROP, P.C.,
ROBERT F. WARDROP, II,

     Defendants.

_____/

**OPINION RE: ISABELLA BANK CORPORATION'S**
**MOTION FOR SUMMARY JUDGMENT**

Appearances:

Todd H. Nye, Esq., Grayling, Michigan, attorney for Plaintiff
John T. Gregg, Esq., Grand Rapids, Michigan, attorney for Defendant Isabella Bank Corporation

Debtor Eric Weeks contends in this adversary proceeding that Defendant Isabella Bank

Corporation ("Isabella Bank") is liable to him for violations of the Section 524(a)(2)[1] injunction that

---

[1] 11 U.S.C. § 542(a)(2).  Debtors' petition pre-dates the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, § 1501(b)(1), 119 Stat. 23.  Unless otherwise indicated, all citations in this opinion to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* will be to the Code as written prior to the BAPCPA amendments.  The citation will be "Section ____."

complements the discharge he received in his Chapter 7 case. Isabella Bank has responded by filing a motion to dismiss Debtor's complaint through summary judgment. For the reasons stated in this opinion, Isabella Bank's motion is denied.

## STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. FED.R.BANKR.P. 7056(a). The court, in considering a motion for summary judgment, is to focus only upon material facts; that is, the court is to consider only those facts that are important vis-à-vis the applicable substantive law. Moreover, in determining whether there is a genuine dispute between the parties, the court is to draw all inferences from the record before it in the light most favorable to the non-moving party. However, if the pertinent record would not lead a rational trier of fact to find for the non-moving party even under such favorable circumstances, then summary judgment should be granted.

## FACTUAL BACKGROUND[2]

Eric Weeks owned and operated a family medical practice through a professional limited liability company known as Flat River Family Care, PLLC ("Flat River"). Flat River had had a lending relationship with either Isabella Bank or its predecessor in interest since 2002.[3] Dr. Weeks, in turn, had personally guaranteed whatever indebtedness Flat River owed to the bank.

---

[2]The record consists of Dr. Weeks' affidavit and the exhibits attached to the parties' respective briefs.

[3]Isabella Bank's predecessor was Greenville Community Financial Corporation and in fact it appears that Dr. Weeks and Flat River transacted business with Greenville Community as opposed to Isabella Bank during most, if not all, of the relevant time frame. Nonetheless, for purposes of this opinion, I will refer to the pertinent bank as "Isabella Bank" so as to minimize confusion.

2

Dr. Weeks and his former wife filed for Chapter 7 relief on February 15, 2005. Flat River's indebtedness to Isabella Bank at that time consisted of a $50,000 term loan and a $100,000 line of credit. The term loan did not come due until June 30, 2009. However, the line of credit was evidenced by only a one year note.

Isabella Bank renewed Flat River's line of credit when it came due, which was June 21, 2005. Isabella Bank also had Dr. Weeks sign a new guaranty of Flat River's debts on that same day. By coincidence, Dr. Weeks had received his Section 727 discharge from this court only a few days before.

This new guaranty, together with two of the three pre-petition guaranties he had already signed, are included as exhibits.[4] They are all on the same bank form. Each is described as an unlimited guaranty whereby Dr. Weeks guaranteed and promised to pay to Isabella Bank all indebtedness owing to it by Flat River no matter when incurred.

Fifteen months passed before Isabella Bank again addressed the Flat River obligations. By this time the previously extended line of credit had expired and payment was past due by several months. It also appears that Flat River was not financially in the position either to pay the line of credit or to justify a further extension.

Isabella Bank's solution was to consolidate the line of credit and the term loan into a new term note with an extended maturity date of September 15, 2011. Isabella Bank also required Dr.

---

[4]It appears that Isabella Bank routinely required Dr. Weeks to sign a new guaranty each time it either increased or extended the Flat River obligations. Dr. Weeks executed his first guaranty when Isabella Bank began the lending relationship in 2002, he executed his second guaranty in 2003 when Isabella Bank increased the term note and extended the line of credit another year, and he executed his third guaranty in 2004 when Isabella Bank again extended the line of credit for another year.

Weeks to sign yet another guaranty of the Flat River indebtedness. Although this guaranty was on a new form, it was as comprehensive as all the previous guaranties he had signed.

Flat River ceased operations only a few weeks after the consolidation of these obligations. Dr. Weeks then began personally paying the monthly installments due under the new Flat River note. He made 17 payments in all before he finally advised Isabella Bank in April 2008 that he was not going to make any more.

It does not appear from the record, though, that Isabella Bank had ever actually compelled Dr. Weeks to make any of these payments. Dr. Weeks does generally contend in his brief that Isabella Bank had "demanded performance on his personal guaranty." *See*, Plaintiff's 9/26/08 Brief, p. 6 [Dkt. No. 18]. However, Dr. Weeks bases that contention upon paragraph 29 of his complaint and that paragraph does not accuse Isabella Bank of making a demand until Dr. Weeks himself had decided to stop making payments. *See*, Complaint, ¶ 29 [Dkt. No. 1].

### DISCUSSION

Section 727(b) provides that a discharge granted under Chapter 7 of the Bankruptcy Code "discharges the debtor from all debts that arose before the date of the order for relief . . ." except to the extent the debt is non-dischargeable under Section 523.[5] That discharge then serves as an injunction against any act to collect or recover a debt that falls within its scope. 11 U.S.C. § 524(a)(2). However, a debtor may enter into an enforceable post-petition agreement to repay a debt

---

[5]Isabella Bank complains that Dr. Weeks never included it as a creditor in the schedules he and his former wife prepared. Failure to schedule a creditor and its claim can result in that claim being non-dischargeable. 11 U.S.C. § 523(a)(3). However, Section 523(a)(3) is inapplicable in instances like this where the Chapter 7 trustee filed a no-asset report and the claim would not have otherwise been declared non-dischargeable under Sections 523(a)(2), (a)(4), or (a)(6). *Cf. In re Madaj*, 149 F.3d 467 (6th Cir. 1998).

that would otherwise be protected by the Section 524(a)(2) injunction provided that the agreement complies with the requirements set forth in Section 524(c). A debtor may also voluntarily choose to repay an otherwise discharged debt. 11 U.S.C. § 524(f).

Dr. Weeks argues that the June 15, 2008 discharge he received from this court relieved him of whatever obligation he had had under the various pre-petition guaranties to repay Isabella Bank for the Flat River indebtedness. Dr. Weeks also argues that the two post-petition guaranties he signed are equally unenforceable because they are reaffirmation agreements that do not comply with Section 524(c). And finally, Dr. Weeks argues that he is entitled to recover damages and attorneys fees from Isabella Bank because of its alleged post-discharge efforts to enforce these guaranty obligations in violation of the Section 524(a)(2) injunction.

Isabella Bank acknowledges that it never attempted to have Dr. Weeks reaffirm his pre-petition guaranty obligations in compliance with Section 524(c). Indeed, neither of the post-petition guaranties Dr. Weeks signed could have served as such a reaffirmation even if that had been the parties' intention since it appears that Dr. Weeks had already received his discharge before either guaranty had been agreed upon. *Cf.* 11 U.S.C. § 524(c)(1). Nevertheless, Isabella Bank contends that the post-petition guaranties are enforceable because of the so-called "new consideration" exception that some courts have found to the restrictions otherwise imposed by Section 524(c) upon post-petition repayment agreements. *See, e.g., Minster State Bank v. Heirholzer (In re Heirholzer),* 170 B.R. 938 (Bankr. N.D. Ohio 1994).

The bank in *Heirholzer* held a pre-petition mortgage in the debtor's real property. The debt secured by that mortgage was discharged vis-à-vis the debtor. However, the bank continued to enjoy its post-petition right to enforce the mortgage itself.

5

The debtor never attempted to reaffirm the discharged debt. However, the debtor did make a new arrangement with the bank whereby the bank would forgo enforcing its mortgage in exchange for a new promissory note and mortgage. The amount of the new note was the same as what the debtor had owed on the discharged debt and indeed the bank applied all of the proceeds from the new loan to repay the discharged debt.

The debtor thereafter defaulted on the new promissory note and the bank ultimately ended up with a deficiency judgment against the debtor for the full amount. The debtor, though, opposed the bank's efforts to enforce that judgment on the theory that the new promissory note was in substance a reaffirmation of the pre-petition debt that had been discharged and, as such, could not be enforced because the bank had not complied with Section 524(c).

The court in *Heirholzer* agreed that there had been no valid reaffirmation of the bank's pre-petition debt. Nonetheless, the court concluded that the second promissory note was enforceable because it was a "new contract supported by good and sufficient consideration." *Id.* at 941. The consideration relied upon was the bank's agreement to forgo foreclosure of the original mortgage in exchange for the new note. Although the court offered no statutory justification for its conclusion, it did cite *In re Button*, 18 B.R. 171 (Bankr. W.D.N.Y. 1982) and *In re Petersen*, 110 B.R. 946 (Bankr. D. Colo. 1990) as similar cases that had reached the same result. *See also, In re Watson*, 192 B.R. 739 (9th Cir. BAP 1996), *aff'd* 116 F.3d 488 (9th Cir. 1997).

However, *Heirholzer* has its detractors. Perhaps the strongest criticism is in *Liptz & Roberts v. Stevens (In re Stevens)*, 217 B.R. 757 (Bankr. D. Md. 1998).

> This court does not find the analyses in these cases to be instructive
> or persuasive primarily because the cases focus only on the existence

of new consideration rather than whether the former discharged obligation constituted any part of the consideration.

* * *

It appears to this court that Plaintiffs and the *Heirholzer* court take the opposite approach to § 524(c), than that which is intended by Congress. In fact, the statute places little emphasis on whether the new consideration is sufficient, rather the thrust of the issue is whether any part of the consideration is based on a debt that is otherwise dischargeable.

*Id.* at 760-61.

*Stevens* is persuasive. The introductory sentence of Section 524(c) is not artfully drafted. Indeed, it would appear that a comma and an "and" are missing.[6] However, its deficiencies cannot obscure what *Stevens* and other courts have found in that subsection to be a clear prohibition against connecting post-petition agreements with previously discharged debt other than as permitted therein. Put simply, the Bankruptcy Code will not impede an existing creditor from entering into another lending relationship with a newly discharged debtor. However, Section 524(c) strictly prohibits such creditors from using the new loan to leverage the reaffirmation of previously discharged debt without there also being compliance with Section 524(c). As the court in *In re Gardner* observed, the fact that some new consideration may have been received in exchange for the resurrection of the previously discharged debt "avails [the creditor] nothing," – "the language of section 524(c) must be strictly construed." 57 B.R. 609, 611 (Bankr. D. Me. 1986).

---

[6]It would seem that Section 524(c) should read as follows:

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title[,] is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, **[and]** only if--

The question remains, though, as to whether Dr. Weeks' continuing guaranty of Flat River's debt falls within Section 524(c)'s strictures. Dr. Weeks has urged this court to just follow the plain language of Section 524. Unfortunately, resolution of this dispute is not so simple.

The parties' focus has been upon whether one or both of the two guaranties Dr. Weeks executed after his discharge was granted is subject to Section 524(c). Neither party, though, considers the implications of the guaranties Dr. Weeks signed pre-petition. To the point, those guaranties covered not only existing indebtedness but future indebtedness as well.

> The indebtedness guaranteed by this Guaranty includes any and all of Borrower's [Flat River's] indebtedness and is used in the most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations and debts to Lender, now existing or **hereinafter incurred or created** . . .

Plaintiff's 9/26/08 Brief, Ex. E, pp. 10-12 [Dkt. No. 18].

Dr. Weeks' complaint against Isabella Bank is ultimately premised upon his contention that Section 524(a)(2) bars Isabella Bank from being able to further enforce the pre-petition guaranties he had given. Put differently, the dispute whether the post-petition guaranties are unenforceable reaffirmation agreements or not is irrelevant if the pre-petition guaranties are still available to Isabella Bank as enforcement tools. Consequently, it is important to understand exactly what is covered by Section 524(a)(2) when a debtor's guaranty is involved.

Section 524(a)(2) in fact is very specific as to the scope of its injunction - only debts subject to Dr. Weeks' Section 727 discharge are covered. Section 727(b), in turn, makes clear that the debts subject to his discharge are only those debts "that arose before the date of the order for relief [*i.e.*. the date Dr. Weeks filed his petition] . . . ." "Debt," which is a defined term, means "liability on a claim," 11 U.S.C. § 101(12) and "claim," which is another defined term, includes any:

8

> right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]

11 U.S.C. § 101(5)(A).

There is no dispute that Dr. Weeks' pre-petition guaranties of the then existing obligations owed by Flat River to Isabella Bank were discharged. Isabella Bank without question had the right to demand payment from Dr. Weeks on account of those guaranties when he filed his petition for relief. Granted, the bank's rights would have been only contingent at that time since it does not appear that Flat River was then in default. However, Section 101(5) is clear that "claim" includes contingent rights to payment.

But what about debts that Flat River had not yet incurred? For example, what if Isabella Bank financed Flat River's acquisition of a new x-ray machine a few years after Dr. Weeks had filed for relief? Would Dr. Weeks' discharge also protect him from any exposure to this future indebtedness because his pre-petition guaranties covered not only existing debts, but also all debts "hereinafter incurred or created?"

The Ninth Circuit BAP's answer is yes. *Republic Bank of California v. Getzoff (In re Getzoff)*, 180 B.R. 572 (9th Cir. BAP 1995). The facts in *Getzoff* are almost identical to those in this case. The debtor had, like Dr. Weeks, guaranteed all of his professional company's debt to the bank and, as such, was liable for that debt when he himself filed for Chapter 7 relief. The bank and the debtor's company executed a new note a few months later to replace the then expired obligation and the debtor executed a new guaranty as well. In that instance, though, the debtor had not yet received his discharge.

The debtor later claimed that his post-petition guaranty was unenforceable because it did not comply with the reaffirmation provisions of Section 524(c). The bank responded by seeking a contrary declaration from the bankruptcy court on the theory that its post-petition extension of the principal obligor's admittedly expired debt was a new loan. The bankruptcy court granted summary judgment in favor of the debtor and the bank appealed.

The BAP affirmed. In doing so, it concluded that the broad meaning that is to be given "claim" under the Bankruptcy Code required it to include within the scope of the debtor's discharge even the bank's rights under the guaranty to seek payment from the debtor for loans yet to be made to the principal obligor.

> The debt under the First Guaranty, as broadly defined in the Bankruptcy Code and in the written terms of the First Guaranty itself, was Getzoff's contingent liability to the Bank in the event GAC defaulted on any obligation "now or hereafter made" to the Bank. This debt was discharged in bankruptcy. The Second Guaranty obligated Getzoff to pay the Bank in the event GAC defaulted on the second note, which was merely an extension of the first note. Essentially, in executing the Second Guaranty, Getzoff assumed the continuing guaranty obligation that had been discharged in his bankruptcy case. Section 524(a) bars the Bank from trying to recover this debt without observing the requirements of Section 524(c) and (d).

*Id.* at 574.

Such reasoning, however, is problematic. The *Getzoff* panel would have permitted Dr. Weeks' post-petition guaranty of the hypothetical new equipment loan had he never previously guaranteed any Flat River indebtedness. Indeed, the *Getzoff* panel would have permitted such a post-petition guaranty had Dr. Weeks' pre-petition guaranties not included future indebtedness. Yet the *Getzoff* panel would render unenforceable any guaranty that Dr. Weeks might have signed for such

10

new equipment under the present circumstances because Isabella Bank had had the unfortunate foresight to include future indebtedness within the scope of the pre-petition guaranties it had Dr. Weeks sign.  Indeed, it is ironic that even more foresight would have been needed by Isabella Bank in order to avoid the consequences of *Getzoff's* reasoning.  That is, Isabella Bank would have had to have realized within the relatively short time permitted by Section 524(c) that a reaffirmation agreement would still be needed even though it had no quarrel otherwise concerning the discharge Dr. Weeks was to receive.

Perhaps, as *Getzoff* seems to suggest, the outcome posed by this hypothetical is only a regrettable consequence of the words Congress has chosen to express its bidding.  However, no statute is exempt from judicial interpretation, for even the plainest language in a statute cannot justify an absurd result.  *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030 (2004); *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 454 and 471 (concurring opinion), 109 S.Ct. 2258 (1989).[7]

Moreover, it is fair to question whether *Getzoff* went too far in its effort to extend the definition of "claim" to its broadest boundaries.  After all, the Supreme Court has also said that a right to payment means "nothing more nor less than an enforceable obligation."  *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 2154 (1991), quoting *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 2131 (1990).  *See, also, In re Glance*, 487 F.3d 317, 320 (6th Cir. 2007).  "Enforceable obligation," of course, is a very broad concept and indeed it would easily include all of the rights a creditor would have against a debtor under a guaranty to recover whatever the principal obligor then owed that creditor.  However, a creditor's

---

[7]Or, to paraphrase *Oliver Twist*'s Mr. Bumble, the law should not be an ass.

right to enforce the same guaranty with respect to the principal obligor's yet-to-be-incurred debts is not so easily categorized, for at least in this instance the debtor clearly had the contractual right under all of his pre-petition guaranties to at any time avoid that future exposure by revoking those guaranties. *See, e.g.,* 2004 Guaranty, Plaintiff's 9/26/08 Brief, Ex. E.  Dkt. No 18].  In fact, Dr. Weeks would have had the same right to revoke even had the guaranties been silent. *Restatement (Third) of Suretyship and Guaranty* § 16 (1995).

Therefore, this court rejects *Getzoff*'s conclusion that the discharge of a debtor's guaranty obligations extends so far as to include even yet to be incurred debts of the principal obligor.  At best, a creditor has only an expectancy with respect to such loans.  The creditor may certainly hope for the guarantor's continuing support.  Indeed, it could even condition future lending on that support.  However, its expectations would always be vulnerable to the debtor's unilateral revocation of his guaranty so long as no new debt is incurred.  Or, to view it differently, no dischargeable "claim" (*i.e.*, an enforceable obligation) can arise on account of a debtor's guaranty of future indebtedness until a new advance has in fact been made.

There is no question in this instance that Dr. Weeks was immunized by the Section 727 discharge from whatever liability he had for the Flat River obligations then owed, for Isabella Bank clearly had the right to demand their repayment from him.  However, Isabella Bank had at that time nothing to enforce against Dr. Weeks with respect to whatever Isabella Bank might loan to Flat River in the future.  In other words, Isabella Bank, Flat River, and Dr. Weeks found themselves at a crossroad in their relationship when the Flat River line of credit expired shortly after Dr. Weeks had received his discharge.  It is fair to say that Flat River wanted Isabella Bank to renew the line and

12

it is equally fair to infer that Isabella Bank was willing to do so provided that Dr. Weeks continued with his support.

As for Dr. Weeks, he had a decision to make. On the one hand, he had the right under all of the guaranties he had previously signed to revoke his past promises to Isabella Bank to guaranty Flat River's future debts. On the other hand, he risked Isabella Bank not giving Flat River the desired extension if he exercised that right.

Dr. Weeks made his choice - he did not revoke his guaranties.[8] However, that post-petition choice in turn bound him to then honor the promises memorialized in those guaranties regardless of the fact that the discharge he had just received relieved him of having to repay the already incurred Flat River obligations. Indeed, Dr. Weeks' execution of yet another guaranty on the same day as the June 21, 2005 extension was superfluous and, in all likelihood, unenforceable.[9] Put simply, Dr. Weeks' liability with respect to Isabella Bank's post-petition extension of the expired line of credit arises not because Dr. Weeks executed a new post-petition guaranty but because he chose not to revoke the open promises under his pre-petition guaranties to repay whatever Isabella Bank was yet to lend Flat River.

---

[8]Dr. Weeks has offered nothing through affidavit or otherwise to establish that he in fact revoked any of the pre-petition guaranties. It is also fair to infer that Dr. Weeks did not intend to revoke his remaining exposure under these prior exposures given his willingness to execute a new guaranty in June 2005 and yet another guaranty in September of 2006.

[9]Whether the post-petition guaranty is itself enforceable depends upon how one interprets its scope. If it is construed as guaranteeing only debts incurred by Flat River subsequent to Dr. Weeks' petition, it would presumably be enforceable. If, however, it is construed as encompassing Flat River's pre-petition debts as well, which is much more likely, then it would run afoul of Section 524(c).

13

This court concludes, though, that Isabella Bank never made a similar new loan with respect to the Flat River term loan that Dr. Weeks had also guaranteed. Granted, Isabella Bank did modify the term loan's provisions when it consolidated the two Flat River obligations in September 2006. However, unlike the line of credit, there had been no expiration of the original note. Nor had any new note been issued. Rather, the consolidation simply altered an obligation that Dr. Weeks had already guaranteed. As such, his previous discharge continued to enjoin Isabella Bank's post-petition efforts to procure repayment of the Flat River term loan from Dr. Weeks regardless of whether modifications had been made to it.[10]

Therefore, Isabella Bank's motion for summary judgment is denied because it has not established under Bankruptcy Rule 7056 that outright dismissal of Dr. Weeks' claims is appropriate. To the contrary, this court determines pursuant to Rule 7056 and FED.R.CIV.P. 56(d)[11] that there is no genuine issue of fact regarding Dr. Weeks' contention that his pre-petition guaranty of Flat River's term loan, which had originally been made in 2002, was subject to the discharge he thereafter received in 2005. Moreover, Isabella Bank's post-petition efforts to resurrect his personal liability with respect to that indebtedness through loan consolidation and new guaranties were for naught because they were not done in conformance with Section 524(c). Therefore, Dr. Weeks will be permitted to proceed against Isabella Bank to recover damages, if any, associated with its alleged

---

[10]The court recognizes that the distinction it draws is fine, for the "new" line of credit was, after all, just an extension of the line of credit previously given. Conversely, the consolidated term loan did include provisions that materially differed from the prior term loan. Nonetheless, I am satisfied that the distinction made is the appropriate one. Again, it is certainly arguable that Flat River had not incurred a new indebtedness when Isabella Bank renewed the expired line of credit in June 2005. However, when all is considered, it is still better to treat that renewal as no different from the making of any other new loan that Dr. Weeks could have refused to guaranty but did not.

[11]FED.R.BANKR.P. 7056 incorporates without modification all of FED.R.CIV.P. 56.

14

post-petition efforts to enforce its guaranties against him, but only to the extent that those efforts were directed at recovering the Flat River term loan.[12]

The court will enter a separate order consistent with this opinion.

_____  1/23/09
Hon. Jeffrey R. Hughes
United States Bankruptcy Judge

Signed this 23rd day of January, 2009
at Grand Rapids, Michigan.

---

[12]Whether Isabella Bank made any effort to enforce Dr. Weeks' guaranties may be an issue at trial, for neither Dr. Weeks' complaint nor his opposition to Isabella Bank's current motion alleges any collection activity by the bank against Dr. Weeks personally until after Dr. Weeks himself had decided to stop making payments on account of the guaranty. *See, supra.* Consequently, the inference at least at this point would be that Dr. Weeks had been making these payments voluntarily and, as already noted, voluntary payments on a discharged debt do not violate the Section 524(a)(2) injunction. Indeed, it is possible that the payments Dr. Weeks had been making were not even on account of any discharged debt since Dr. Weeks' remained liable to Isabella Bank with respect to its post-petition extension of the expired Flat River line of credit.

15